HOLLISTER LAW CORPORATION
GEORGE C. HOLLISTER, State Bar No. 137706
655 University Ave., Ste. 200
Sacramento, CA 95825
(916) 488-3400 (Telephone & Facsimile)
hollisterlaw@earthlink.net (E-mail)

Attorney for Chapter 11 Debtor BR Enterprises

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
## (SACRAMENTO DIVISION)

| | |
|---|---|
| In re:<br><br>BR ENTERPRISES, a California General Partnership,<br><br>Debtor. | Case No. Case No. 15-21575-A-11<br><br>Motion No. HLC-14<br><br>**ORDER CONFIRMING THIRD AMENDED CHAPTER 11 PLAN**<br><br>Confirmation Hearing Date: 11/30/2015<br>Time: 10:00 a.m.<br>Dept: "A" (Courtroom 28)<br>U.S. Federal Courthouse<br>501 I Street, 7th Floor<br>Sacramento, CA 95814 |

On November 30, 2015, a hearing was held in confirmation of the Third Amended Plan of Reorganization (the "Plan") filed November 23, 2015, by Chapter 11 Debtor BR Enterprises (hereinafter "Debtor"). Appearances were noted on the record and separate findings of fact and conclusions of law (the "Findings") were recited thereon.

Consistent with the Findings,

**IT IS HEREBY ORDERED THAT:**

-1-

RECEIVED
November 30, 2015
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0005680605

1.      The Plan be and is hereby confirmed in the form attached hereto as **Exhibit "A."**

**IT IS SO ORDERED.**

Dated: December 01, 2015                    By the Court

Michael S. McManus
United States Bankruptcy Judge

# EXHIBIT "A"
**[DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION]**

(33)

1  HOLLISTER LAW CORPORATION
   GEORGE C. HOLLISTER, State Bar No. 137706
2  655 University Ave., Ste. 200
   Sacramento, CA  95825
3  (916) 488-3400 (Telephone & Facsimile)
4  hollisterlaw@earthlink.net  (E-mail)

5  Attorney for Chapter 11 Debtor

6                    UNITED STATES BANKRUPTCY COURT
7                     EASTERN DISTRICT OF CALIFORNIA
                          (SACRAMENTO DIVISION)
8
   In re:                              )  Case No. 15-21575-A-11
9                                      )
        BR ENTERPRISES, a California    )  DCN: N/A
10  General Partnership,                )
                                        )  **DEBTOR'S THIRD AMENDED**
11                                      )  **CHAPTER 11 PLAN OF**
                                        )  **REORGANIZATION**
12              Debtor.                 )  **[November 23, 2015]**
                                        )
13                                      )
                                        )  Hearing Date: 11/30/2015
14                                      )  Time: 10:00 a.m.
                                        )  Dept: "A" (Courtroom 28)
15                                      )  U.S. Federal Courthouse
                                        )  501 I Street, 7th Floor
16                                      )  Sacramento, CA  95814
                                        )
17                                      )
18  _____)

19

20

21

22

23

24

25

26

27

28

---

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, ALL STATEMENTS IN THIS PLAN OF REORGANIZATION (THE "PLAN") AND THE ACCOMPANYING DISCLOSURE STATEMENT (THE "DISCLOSURE STATEMENT") CONCERNING THE HISTORY OF THE DEBTOR'S BUSINESS, ITS PAST OR PRESENT FINANCIAL CONDITION, TRANSACTIONS TO WHICH THE DEBTOR WAS OR IS A PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON SECURED CREDITORS, UNSECURED CREDITORS OR EQUITY SECURITY HOLDERS ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTOR AND NOT TO COUNSEL TO THE DEBTOR.  COURT APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE A FINDING BY THE COURT THAT THE INFORMATION PROVIDED BY THE DEBTOR AND CONTAINED IN THE DISCLOSURE STATEMENT IS ACCURATE.

## Article I

## Definitions

The definitions contained in the Bankruptcy Code are incorporated herein. Whether or not inconsistent with the definitions contained in the Bankruptcy Code, the following terms used in the Plan of Reorganization shall have the following meanings:

1.01.  Allowed Administrative Claim:  An Allowed Claim relating to the administration of the Case pursuant to Sections 503(b) and/or 507(a)(2) of the Code, including, without limitation, any fees of professionals employed in this Case which have been approved by the United States Bankruptcy Court, and any quarterly fees owing to the Office of the United States Trustee.

1.02.  Allowed Claim:  A Claim against Debtor or the Estate that has not been satisfied prior to the Effective Date, and is specifically designated as an Allowed Claim in the Plan, or arose or is deemed to have arisen before the Effective Date, and to the extent it is either (a) scheduled in the list of creditors prepared or filed with the Court by the Debtor and not listed as disputed, contingent or unliquidated as to amount, or (b) with respect to which a proof of claim has been filed by the Bar Date with the Court and as to which no objections have been filed by the (Claim Objection) Bar Date (see paragraph 1.11, below, and paragraph 9.04 of the Plan), or as to which any such objection has been determined by an order or judgment which has become final.  If the claim arose after the Petition Date, (1) the claim is of a kind that can be voluntarily paid from the Estate without specific Court approval and is so paid within the later of 60 days after the Effective Date or 60 days after all materials that must be filed with or issued by the Court as a prerequisite to payment of the claim have been properly filed and served or issued or (2) the claim has been allowed by Final Order.  Notwithstanding the foregoing, and except as

otherwise provided in the Plan, no claim shall be deemed an Allowed Claim if such Claim includes attorneys' fees, default interest, late penalties or similar charges or costs of any kind, accrued or incurred post-petition, unless the same have been approved by the Court, in accordance with the procedure set forth in Article IX, §9.01 of the Plan.

1.03.    Allowed Guaranteed Unsecured Claims:  An Allowed Unsecured Claim arising from the guarantee by Debtor on account of a claim against a third party.

1.04.    Allowed Priority Claim:    An Allowed Claim entitled to priority pursuant to Bankruptcy Code §§507(a) (4), (5), (6), (7), (9) or (10).

1.05.    Allowed Priority Tax Claim:    An Allowed Claim entitled to priority pursuant to Sections 507(a)(8) of the Code, including but not limited to any claim for a priority tax that was not assessed against Debtor until after the Petition Date as provided at Bankruptcy Code §502(i).

1.06.    Allowed Secured Claim:    An Allowed Claim secured by a lien, security interest or other charge against property in which this estate has an interest, or which is subject to set off under Bankruptcy Code §553, to the extent of the value - determined in accordance with Bankruptcy Code §506(a) - of the interest in such property, or such secured claim in the estate's interest in such property, or to the extent of the amount subject to any set off, as the case may be. Except as otherwise provided in the Plan, unpaid principal and all accrued interest shall be computed and aggregated as of the Confirmation Date and shall thereafter bear interest as provided for in the Plan or as allowed under applicable law or loan documents, whichever is applicable.  Notwithstanding the foregoing, and except as otherwise provided in this Plan, no claim shall be deemed an Allowed Secured Claim if such Claim includes attorneys' fees, default interest, late penalties or similar charges or cost of any kind, accrued or incurred post-petition, unless the same has been expressly provided for in this Plan, or approved by the Court in accordance with the procedure set forth in Article IX, §9.01 of the Plan.

1.07.    Allowed Unsecured Claim:  Allowed Claims against the Debtor for which there are no assets of the Debtor serving as security, but excluding any Allowed Priority Claims.

1.08.    Bankruptcy Code or Code:  Title 11 of the United States Code, as amended.  All citations in this Plan to section numbers are to the Bankruptcy Code unless otherwise expressly indicated.

1.09.    Bankruptcy Court or Court:  The United States Bankruptcy Court for the Eastern District of California or such successor court or tribunal as may hereafter be confirmed or

created by lawful authority with power to confirm reorganization plans under Chapter 11, Title 11, United States Code and all other applicable statutes, rules and regulations.

      1.10.  <u>Bankruptcy Rules or Rules</u>:  The Federal Rules of Bankruptcy Procedure, as amended, and the local Bankruptcy Rules, as adopted, by the Court for use in the United States Bankruptcy Court for the Eastern District of California.

      1.11.  <u>Bar Date</u>:  The term "Bar Date" refers to the deadline for filing proofs of Claims in this case, which deadline is June 25, 2015 for non-governmental creditors, and August 26, 2015 for governmental units.

      1.12.  <u>Claim</u>: The term "Claim" means: (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, known, unknown, legal, equitable, secure, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, known, unknown, secured, or unsecured.

      1.13.  <u>Confirmation Date</u>:  The date upon which an order confirming the Plan is entered by the Clerk on the Court docket.

      1.14.  <u>Debtor</u>:   BR Enterprises, a California General Partnership, in its capacity as Chapter 11 Debtor-in-possession (pre-confirmation/Effective Date) or as a Revested Debtor under a confirmed Chapter 11 Plan (post-confirmation/Effective Date).

      1.15.  <u>Disclosure Statement</u>:   The Disclosure Statement prepared by the Debtor as required by Section 1125 of the Code and approved by an order of the Court.

      1.16.  <u>Disallowed Claim</u>:     As used herein, the term "Disallowed Claim" means a Claim against Debtor or the Estate that is specifically designated as a Disallowed Claim in the Plan or by the Court, or arose or is deemed to have arisen before the Effective Date, to the extent that it is either (a) not scheduled in the list of creditors prepared or filed with the Court by the Debtor or accompanied by a proof of claim filed prior to the Claims Bar Date, (b) listed in the schedule of creditors filed by the Debtor with the Court as "disputed," "contingent" or "unliquidated" as to amount, and/or (c) with respect to which a proof of claim has been timely filed with the Court, (1) the proof of claim was not filed on or before the Claims Bar Date, or (2) the proof of claim was filed on or before the Claims Bar Date but an objection to the allowance thereof has been timely filed and sustained by final order of the Court.  If the claim arose after the Petition Date, (1) the claim is of a kind that cannot be voluntarily paid from the Estate without

specific Court approval and has not been paid within the later of 60 days after the Effective Date or 60 days after all materials that must be filed with or issued by the Court as a prerequisite to payment of the Claim have been properly filed and served or issued or (2) the claim has been disallowed by Final Order.  Moreover, all claims for reimbursement or contribution against Debtor made by any co-debtor which was contingent as of the Petition Date shall be automatically disallowed effective as of the Confirmation Date pursuant to Bankruptcy Code §502(e).

1.17.   Disputed Claims:      As used herein, the term "Disputed Claims" refers to all Claims which Debtor intends to disallow in full or in part, including but not limited to the Claims referenced at Article VI of the Disclosure Statement.

1.18.   Effective Date:  The Effective Date of this Plan shall be the thirtieth (30th) calendar day following the entry of a Final Order confirming the Plan.

1.19.   Final Order:    The term "Final Order" means an order, including but not limited to a judgment, of the Bankruptcy Court, the District Court, any Appellate Court, Court of Appeal, or other judicial entity, as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the relevant time for appeal has expired and a notice of appeal has not been filed timely.

1.20.   Guaranteed Claims:    Claims of third parties guaranteed by Debtor.

1.21.   Income:       As used herein, the term "Income" means all consideration constituting Property of the Estate paid to and received by Debtor during the Plan Term.

1.22.   Petition Date:   February 27, 2015.

1.23.   Plan:   The Debtor's Chapter 11 Plan of Reorganization, in its entirety and all addenda, exhibits, schedules, releases and other attachments thereto, as the same may be amended or supplemented from time to time and any amendment or modification thereof.

1.24.   Plan Term.  The term "Plan Term" refers to the duration of the Plan, which, in this case, begins on the Petition Date and ends on the earlier of (i) Sixty (60) months from the Confirmation Date, or (ii) the date Debtor makes the last payment required under the Plan.

1.25.   "Property of the Estate":  The definition of "Property of the Estate" set forth at Bankruptcy Code §541 is incorporated herein by reference.  In summary, Property of the Estate includes, but is not limited to, any and all rights, entitlements, claims, and/or causes of action, including rights of setoff or equitable, injunctive, or declaratory relief, against any other Person and/or property, including rights of indemnity and/or contribution, regardless of whether

such claims, rights, entitlements, or causes of action are liquidated, unliquidated, contingent, noncontingent, disputed, undisputed, and/or barred or unenforceable for any reason, and includes all property, including earnings, acquired between the Petition Date and the date the case is closed, dismissed or converted, whichever occurs first.

 1.26. "Real Estate": As used herein, the term "Real Estate" means all interests of the Debtor in real property as of the Petition Date.

 1.27. Unclassified Claims: The allowed amount of:

  (i) All Allowed Administrative Claims, and

  (ii) All Allowed Priority Tax Claims.

 1.28. Unsecured Claims: Claims against the Debtor for which there are no assets of the Debtor serving as security, but excluding any Allowed Administrative Claims, Allowed Priority Claims, and Allowed Priority Tax Claims.

## Article II

## Administrative Expenses And Unclassified Claims

 2.01 Unless the holder of a particular Claim agrees otherwise, all Allowed Administrative Claims, and U.S. Trustee Fees (payable through the Confirmation Date under 28 U.S.C. §1930) shall be paid by the Debtor in full, in cash, by no later than the Effective Date or, if not allowed until after the Effective Date, within fifteen (15) calendar days following the entry of a Court order approving such payment. *Claims for pre-confirmation Administrative Claims not previously allowed by the Court, must be filed with the Court and served on counsel for the Debtor by the 60th calendar day following the Effective Date or shall be conclusively deemed waived and forfeited.*

 2.02 Allowed Priority Tax Claims: Holders of any Allowed Priority Tax Claims arising under §507(a)(8) will receive payment in full by no later than five (5) years after the Petition Date by way of deferred cash payments. The balance owed on said claims shall be paid, at the latest, in equal quarterly installments of principal and interest, with the first payment being due on the 15th day of the first full calendar quarter following the Effective Date. Debtor may pre-pay these tax claims.

### Article III

### <u>Classification of Claims and Interests</u>

3.01    Each Creditor should carefully read both this Plan and the accompanying Disclosure Statement to determine into which particular class such creditor's claim fits and how the claims in that particular class are treated by the Plan.  To the extent it is determined that certain Creditors are not impaired, such Creditors shall be deemed to have accepted the Plan.

3.02    For the purposes of classifying the Debtor's obligations created under the Plan, the claims and interest of the creditors of the Debtor are classified as follows:

3.02(a)    <u>Unclassified Claims</u>:  The following Unclassified Claims shall be treated, but shall not necessarily be entitled to vote under this Plan:

- Professional Fees & Costs allowed per Bankruptcy Code §507(a)(2):
    - Hollister Law Corporation (Debtor's Authorized Bankruptcy Counsel)
        - Estimated at $75,000
    - Evanhoe Kellogg & Co (Debtor's Authorized Certified Public Account)
        - Estimated at $5,000
    - Properties by Merit, Inc. & Keller Williams Realty (Debtor's Authorized Brokers/Realtors)
        - Estimated at $0 (Paid current as each escrow closes)
- Deposits allowed per Bankruptcy Code §507(a)(7) [maximum of $2,775]
    - None
- Unsecured Priority Tax Claims of Government Units allowed by Bankruptcy Code §507(a)(8)
    - Internal Revenue Service            ($100 – Claim #1 – Disputed)

3.02(b)    <u>Class 1</u>:  (Redding Bank of Commerce)        Class 1 is comprised of the Allowed Secured Claims of Redding Bank of Commerce. This Class 1 Creditor is impaired.

3.02(c)    <u>Class 2</u>:  (Central Valley Community Bank)  Class 2 consists of the allowed claim of Central Valley Community Bank.  This Class 2 Creditor is impaired.

3.02(d)    <u>Class 3</u>:  (Joe & Lavonne Curto Family Trust)  Class 3 consists of Joe & Lavonne Curto Family Trust.  This Class 3 Claimant is *not* impaired.

3.02(e)    <u>Class 4(a)</u>:  (Tehama County Tax Collector)        Class 4(a) is

- 6 -

comprised of the Allowed Secured Claims, if any, of the Tehama County Tax Collector on account of real property taxes assessed against the Real Estate.  This Class 4 Claimant is *not* impaired.

        3.02(f)      Class 4(b):  (Riverside County Tax Collector)      Class 4(b) is comprised of the Allowed Secured Claims, if any, of the Riverside County Tax Collector on account of real property taxes assessed against the Real Estate.  This Class 4(b) Claimant is *not* impaired.

        3.02(g)      Class 5:  (Contingent Unsecured Claims)     Class 5 consists of the disputed contingent unsecured claim of Hank Spacone, Trustee of Shasta Enterprises, a California partnership as such claim may be amended from time to time.  This Class is impaired.

        3.02(h)      Class 6(a):  (Allowed Unsecured Convenience Class Creditors) Class 6(a) consists of creditors whose claims total less than $2,500.00 or who voluntarily reduce their claims to $2,500.00.  This Class is unimpaired.

        3.02(i)      Class 6(b):  (General Unsecured Claims)     Class 6(b) consists of all Allowed Unsecured Claims not treated in any other Class, including any deficiency claims of holders of Allowed Secured Claims.  This Class is impaired.

        3.02(j)      Class 7:  (Equity)     Class 7 consists of all interests of Debtor's General Partners, Antonio Rodriguez Jr. and Antonio Rodriguez III in the Debtor.  This Class is unimpaired.

### Article IV

### Impairment of Claims

Classes 1 (Redding Bank of Commerce), 2 (Central Valley Community Bank), 5 (Hank Spacone, Trustee) and 6(b) (General Unsecured Claims) are impaired as that term is defined at 11 U.S.C. §1124.

### Article V

### Plan Assumptions

This Plan is predicated upon the following assumptions, in addition to the assumptions underlying the Operating Budget referenced at Article VII of the Disclosure Statement:

        5.01    Debtor will be able to pay all post-bankruptcy obligations and operating expenses as they come due, including all taxes including but not limited to real estate taxes and

**DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION [11/23/2015]**

payroll taxes, homeowner association dues, employee wages, administrative overhead, and other payments to creditors required during the Plan Term from ongoing lease and/or sales of Real Estate;

       5.02    Debtor will continue to market and sell (or endeavor to refinance) so much of the Real Estate as is necessary to fund the Plan during the Plan Term.

       5.03    All Allowed Claims of creditors will be paid in full within five years of the Effective Date either through the sale or refinancing of the real and/or personal property of the estate, with the exception that all Allowed Secured Claims (Classes 1 through 3) shall be paid in full within two years of the Effective Date, with amortized monthly interest-only payments to be made in the interim commencing on the Effective Date as provided in the Plan.

       5.04    Debtor will generate a minimum of $450,000 net of closing costs and liens annually during the Plan Term from the sale of Sunset Hills Subdivision Lots.

       5.05    The Bankruptcy Code requires a discussion of the "potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interest in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. §1125(a)(1). Debtor is a general partnership organized and maintained under the laws of the State of California, and therefore Debtor assumes that all profits and losses realized during the Plan Term will be passed through to its partners the same as they did prior to the Petition Date. Consequently, Debtor does not expect to be directly impacted by taxable events triggered by the liquidation of assets under the Plan. Notwithstanding the foregoing, Creditors are encouraged to consult with a qualified tax professional and should not rely upon any statements by the Debtor (not a tax expert) regarding possible tax consequences either to the Debtor or to Creditors under this Plan. Any distribution made pursuant to the terms of any confirmed plan would be net of (i.e., after payment in full of) any tax imposed upon the bankruptcy Estate or its partners. Consequently, any distribution to creditors under the confirmed plan may be considered taxable income to such creditors by taxing authorities, and may have to be disclosed as such when required by applicable law to entitled taxing authorities by the beneficiary of any plan payment. More specific tax assumptions are contained in the Liquidation Analysis at Article XIV of the Disclosure Statement.

**DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION [11/23/2015]**

**Article VI**

**Treatment of Impaired Classes**

  **6.01** **Impaired Classes Generally.**  Classes 1 (Redding Bank of Commerce), 2 (Central Valley Community Bank), 5 (Hank Spacone, Trustee) and 6(b) (General Unsecured Claims) are impaired under this Plan.  In no event will Debtor distribute to the holder of any Allowed Claim more or less than one hundred percent (100%) of the amount of such Allowed Claim, inclusive of interest thereon.  All impaired classes of claims and classes of interest shall receive the distributions set forth in this Article on account of and in complete satisfaction of all such Allowed Claims (and any interest accrued thereon). Without limiting the foregoing and effective upon the Effective Date, each creditor and each equity security holder (or their successors) shall be deemed to have assigned to the Debtor and all such parties shall be deemed to have waived, relinquished and released any and all of their rights and claims against the Debtor, other than as provided for in the Plan or the Court's order confirming the Plan.

  **6.02** **Class 1 (Allowed Secured Claim of Redding Bank of Commerce)**
Class 1 is comprised of the Allowed Secured Claims of Redding Bank of Commerce ("RBC"). Class 1 is further subdivided into Class 1-A, and Class 1-B.  Both Class 1-A and Class 1-B are impaired under this Plan.

  **Class 1-A.**  Class 1-A is the Allowed Secured Claim of RBC represented by Proof of Claim No. 7, referencing Loan No. 3160610 which RBC extended pre-petition to Debtor ("Claim No. 7" or the "Cottonwood Creek Ranch Loan").

    Claim No. 7 shall be deemed allowed in full in the amount of $1,835,627.73 accrued and unpaid as of February 27, 2015, consisting of $1,802,437.12 in principal, $21,487.78 in interest, $2,000.00 in late charges, and $9,702.83 in trustee's fees and foreclosure costs.

    Upon the Confirmation Date, the Cottonwood Creek Ranch Loan shall continue to be secured by the 1st priority deed of trust recorded September 17, 2009 against that real property commonly described as Cottonwood Creek Ranch - Phase II, 20500 Lake California Drive, Cottonwood, California [approximately 279 acres consisting of Tehama County Assessor's Parcel Nos. 004-140-73; 004-140-75; and 004-140-86].

Upon the Confirmation Date, the Cottonwood Creek Ranch Loan shall be deemed to be fully secured, and BR Enterprises and its partners waive any right to seek to bifurcate the Cottonwood Creek Ranch Loan pursuant to Bankruptcy Code §506 or otherwise.

Interest shall accrue on the unpaid principal balance of the Cottonwood Creek Ranch Loan from February 27, 2015 through and including the Confirmation Date at 5.25% per annum. No late charges, nor default interest, nor pre-confirmation attorneys fees shall be assessed to the Cottonwood Creek Ranch Loan for the period from February 27, 2015 to and including the Confirmation Date. For example, assuming the Confirmation Date is December 2, 2015, the accrued post-filing interest will be $73,073.80.

As of the Confirmation Date, all pre-petition and post-petition accrued and unpaid interest, all pre-petition late charges, and all foreclosure trustee fees and expenses shall be added to the principal balance of the Cottonwood Creek Ranch Loan. As of the Confirmation Date, and continuing until the Cottonwood Creek Ranch Loan is paid in full, the re-capitalized Cottonwood Creek Ranch Loan shall bear non-default interest at the fixed rate of 5.25% per annum.

Commencing on the earlier of January 2, 2016 or the Effective Date, and continuing on the same day of each month thereafter, BR Enterprises shall tender to RBC for application to the Cottonwood Creek Ranch Loan monthly payments of not less than interest-only. For example only, assuming the Cottonwood Creek Ranch Loan totals $1,908,701.53 as of the Confirmation Date, the minimum monthly interest-only payment will be $8,350.57.

From and after the Confirmation Date, Debtor shall take all necessary and reasonable steps required to maintain and preserve the collateral for the Cottonwood Creek Ranch Loan and Debtor shall make the following adequate protection payments to or for the benefit of RBC: (1) timely payment of all real property taxes assessed against the collateral for the Cottonwood Creek Ranch Loan as such taxes are due and payable without penalty, and (2) monthly interest payments as provided for above.

Promptly following the Effective Date, RBC shall rescind the Notice of Default

recorded August 29, 2014 and the Notice of Sale recorded on or about February 4, 2015, 2014 against the real property commonly described as Cottonwood Creek Ranch - Phase II. Such rescission shall not prejudice RBC's rights to record a subsequent notice of default nor a subsequent notice of sale as to the collateral for the Cottonwood Creek Ranch Loan in the event of a default first occurring subsequent to the Confirmation Date.

The Cottonwood Creek Ranch Loan shall continue to be additionally secured by the approximately 2,600 acres owned by BR Enterprises which includes Tehama County Assessor's Parcel Nos. 004-140-78; 004-140-83; 006-200-33; 009-150-12; 007-070-09; 007-070-07; 007-070-24; 009-150-13; 009-490-06; and 006-200-30.

Upon the Effective Date, the Cottonwood Creek Ranch Loan and the Accumulated Deficiency Claim (defined below) shall not be deemed cross-defaulted, and RBC may not declare a default under one of such obligations based upon a default under the other obligation.

As of the Effective Date, the Cottonwood Creek Ranch Loan shall be fully due and payable on or before 24 months following the Effective Date, unless earlier accelerated due to a default in the minimum monthly payments or other default under the loan documents, except that neither (i) the "belief the prospect of payment of the indebtedness is impaired," nor (ii) the future death, insolvency, lawsuit against and/or bankruptcy of any of Debtor's general partners shall constitute an "event of default" under the governing loan documents.

Upon the Effective Date, the exclusive remedy for collection of the Cottonwood Creek Ranch Loan shall be exercise of the non-judicial trustee's sale procedures established under the deeds of trust and California law. Upon the Effective Date, Bank shall be deemed to have waived the right to bring a judicial foreclosure action to collect the Cottonwood Creek Ranch Loan, and additionally waived the right to proceed individually against the general partners of BR Enterprises to collect all or any portion of the Cottonwood Creek Ranch Loan.

In the event Debtor elects to consummate a sale of the real property collateral described in Section 6.02.01.02, and either or both the Cottonwood Creek Ranch Loan and the Accumulated Deficiency Claim have not earlier been paid in full, the proceeds of sale of such real

- 11 -

property collateral shall be disbursed directly from escrow as follows:

- First, payment of real estate brokerage fees, escrow costs and fees, documentary transfer taxes, and other normal and customary reasonable costs and expenses of sale;

- Second, real property taxes and assessments, prorated to close of escrow;

- Third, repayment in full of the then-outstanding balance of the Cottonwood Creek Ranch Loan;

- Fourth, to the extent monies then remain, up to $350,000.00 to Debtor;

- Fifth, to the extent monies then remain, repayment in full of the then-outstanding balance of the Accumulated Deficiency Claim; and,

- Sixth, to the extent monies then remain, to Debtor.

Upon reasonable confirmation that the proceeds of such sale shall be disbursed directly from escrow exclusively as set forth above, and that the proceeds of such sale shall be sufficient to at least result in payment in full of the Cottonwood Creek Ranch Loan, RBC shall execute and deliver to escrow a reconveyance of its deed of trust encumbering the real property collateral described in Section 6.02.01.02 above.

In the event RBC does not timely receive the minimum monthly payments required on account of the Cottonwood Creek Ranch Loan following the Confirmation Date, or in the event the Cottonwood Creek Ranch Loan is not paid in full within 24 months following the Effective Date, Bank shall provide to BR Enterprises and its then counsel of record, if any, via first class mail and e-mail, a written notice of default and demand for cure. In the event the defaults identified in such written notice are not fully cured within 20 calendar days following the date such notice is sent, RBC may immediately and without further notice record notice of default against the collateral for the Cottonwood Creek Ranch Loan and otherwise proceed to foreclose on such collateral in accordance with California law and this Plan of Reorganization.

In the event that on or after 20 months following the Effective Date Debtor has not entered into a bona fide purchase and sale agreement providing for a sale of the Cottonwood Creek Ranch Phase II real property in an amount sufficient to payoff in full the then-remaining balance of the Cottonwood Creek Ranch Loan on or before 24 months following the Effective

Date, and an escrow for consummation of such proposed sale has not been opened and remains open, RBC may, without further notice, record notice of default against the collateral for the Cottonwood Creek Ranch Loan and otherwise proceed to foreclose on such collateral in accordance with California law and this Plan of Reorganization, except that no such foreclosure sale shall be scheduled or held earlier than 24 months following the Effective Date.

Debtor and RBC agree to execute and deliver to each other such other documents as may be reasonably required to document or perfect the terms and conditions of this Plan of Reorganization and the treatment of Claim No. 8 and the Accumulated Deficiency Claim, including without limitation, a "Change In Terms Agreement" to be prepared by RBC. Notwithstanding such, it is not the intention of Debtor nor RBC to re-document the entire relationship between the parties.

In the event of any discrepancy or conflict with regard to the treatment of Claim No. 7 or the Cottonwood Creek Ranch Loan between this Section 6.02.01 and any other terms and conditions of the Plan of Reorganization, this Section 6.02.01 shall control.

**Class 1-B.** Class 1-B is the Allowed Secured Claim of RBC represented by Proof of Claim No. 8, ("Claim No. 8" or "the Accumulated Deficiency Claim").

Claim No. 8 shall be deemed allowed in full in the amount of $1,400,000.00 as of the Confirmation Date, inclusive of all interest, late charges, trustee's fees, attorneys fees, and other collection costs which may have been incurred pre-confirmation.

Upon the Confirmation Date, the Accumulated Deficiency Claim shall continue to be secured by the first priority deed of trust recorded August 15, 2013 against the approximately 2,600 acres owned by BR Enterprises which includes Tehama County Assessor's Parcel Nos. 004-140-78; 004-140-83; 006-200-33; 009-150-12; 007-070-09; 007-070-07; 007-070-24; 009-150-13; 009-490-06; and 006-200-30.

Upon the Confirmation Date, the Accumulated Deficiency Claim shall be deemed to be fully secured, and BR Enterprises and its partners waive any right to seek to bifurcate the

- 13 -

Accumulated Deficiency Claim pursuant to Bankruptcy Code §506 or otherwise.

From and after the Confirmation Date, the Accumulated Deficiency Claim, as modified by this Plan of Reorganization, shall initially bear non-default interest at the fixed rate of 3.25% per annum. In the event the Accumulated Deficiency Claim has not been paid in full by December 20, 2016, the Accumulated Deficiency Claim shall bear non-default interest at the rate of 6.25% per annum from and after the Confirmation Date, and a lump-sum payment of the accumulated additional interest in the amount of $42,000.00 shall be due on or before January 2, 2017.

Commencing on the earlier of January 2, 2016 or the Effective Date, and continuing on the same day of each month through December, 2016, BR Enterprises shall tender to RBC for application to the Accumulated Deficiency Claim minimum monthly interest-only payments of $3,791.67. In the event the Accumulated Deficiency Claim has not been paid in full by December 20, 2016, commencing with the monthly payment day in January, 2017 and continuing on the same day each month until paid in full, Debtor shall tender to RBC for application to the Accumulated Deficiency Claim minimum monthly interest-only payments computed at the interest rate of 6.25% per annum.

In the event that on or before December 20, 2016 Debtor tenders to RBC the principal sum of $1,200,000.00, plus the interest accrued on the Accumulated Deficiency Claim from and after the Confirmation Date, RBC shall discount the principal balance of the Accumulated Deficiency Claim by $200,000.00, and the Accumulated Deficiency Claim shall be deemed paid in full.

From and after the Confirmation Date, Debtor shall take all necessary and reasonable steps required to maintain and preserve the collateral for the Accumulated Deficiency Claim and Debtor shall make the following adequate protection payments to or for the benefit of RBC: (1) timely payment of all real property taxes assessed against the collateral for the Accumulated Deficiency Claim as such taxes are due and payable without penalty, and (2) monthly interest payments as provided for above.

**DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION [11/23/2015]**

Upon the Effective Date, the Cottonwood Creek Ranch Loan (defined above) and the Accumulated Deficiency Claim shall not be deemed cross-defaulted, and RBC may not declare a default under one of such obligations based upon a default under the other obligation.

As of the Effective Date, the Accumulated Deficiency Claim shall be fully due and payable on or before 24 months following the Effective Date, unless earlier accelerated due to a default in the minimum monthly payments or other default under the loan documents, except that neither (i) the "belief the prospect of payment of the indebtedness is impaired," nor (ii) the future death, insolvency, lawsuit against and/or bankruptcy of any of Debtor's general partners shall constitute an "event of default" under the governing loan documents.

Upon the Effective Date, the exclusive remedy for collection of the Accumulated Deficiency Claim shall be exercise of the non-judicial trustee's sale procedure established under the deeds of trust and California law.  Upon the Effective Date, Bank shall be deemed to have waived the right to bring a judicial foreclosure action to collect the Accumulated Deficiency Claim, and additionally waived the right to proceed individually against the general partners of BR Enterprises to collect all or any portion of the Accumulated Deficiency Claim.

In the event RBC does not timely receive the minimum monthly payments required on account of the Accumulated Deficiency Claim following the Confirmation Date, or in the event the Accumulated Deficiency Claim is not paid in full within 24 months following the Effective Date, Bank shall provide to BR Enterprises and its then counsel of record, if any, via first class mail and e-mail,  a written notice of default and demand for cure.  In the event the defaults identified in such written notice are not fully cured within 20 calendar days following the date such notice is sent, RBC may immediately and without further notice record notice of default against the collateral for the Accumulated Deficiency Claim and otherwise proceed to foreclose on such collateral in accordance with California law and this Plan of Reorganization.

In the event that on or after 20 months following the Effective Date Debtor has not entered into a bona fide purchase and sale agreement providing for a sale of the real property for the Accumulated Deficiency Claim in an amount sufficient to payoff in full the then-remaining balance of the Accumulated Deficiency Claim on or before 24 months following the Effective

Date, and an escrow for consummation of such proposed sale has not been opened and remains open, RBC may, without further notice, record notice of default against the collateral for the Accumulated Deficiency Claim and otherwise proceed to foreclose on such collateral in accordance with California law and this Plan of Reorganization, except that no such foreclosure sale shall be scheduled or held earlier than 24 months following the Effective Date.

In the event Debtor desires to sell a portion of the real property collateral securing the Accumulated Deficiency Claim, and the projected net proceeds of such sale shall not be sufficient to pay off in full the then-balance of the Accumulated Deficiency Claim, Debtor and RBC shall negotiate in good faith in an attempt to agree upon a "release price" or other terms and conditions to allow the contemplated sale to be effectuated without adversely affecting Bank's prospect of payment in full of the Accumulated Deficiency Claim within the time frame and other terms and conditions established by this Plan of Reorganization.

Debtor and RBC agree to execute and deliver to each other such other documents as may be reasonably required to document or perfect the terms and conditions of this Plan of Reorganization and the treatment of Claim No. 8 and the Accumulated Deficiency Claim, including without limitation, a "Change In Terms Agreement" to be prepared by RBC. Notwithstanding such, it is not the intention of Debtor nor RBC to re-document the entire relationship between the parties.

In the event of any discrepancy or conflict with regard to the treatment of Claim No. 8 or the Accumulated Deficiency Claim between this Section 6.02.02 and any other terms and conditions of the Plan of Reorganization, this Section 6.02.02 shall control.

**6.03    Class 2 (Allowed Secured Claim of Central Valley Community Bank)**

Class 2 consists of the Allowed Secured Claim of Central Valley Community Bank ("CVCB" or "Class 2 Claimant"). Class 2 Claimant is impaired.

Class 2 Claimant shall have an Allowed Secured Claim as of the Petition Date of $1,813,268.83, consisting of $1,772,366.73 in principal and $14,474.32 in interest (@ 5.25%) plus actual attorneys fees and costs incurred by Class 2 Claimant not to exceed $12,500, late charges of $5,948.19, foreclosure fees of $5,229.59, and appraisal fees of $2,750. From the Petition Date through the Confirmation Date, the principal portion of the Allowed Class 2

Secured Claim shall accrue interest at the simple rate of 5.25%.  As of the Confirmation Date, all then-outstanding principal, pre-petition interest, post-petition interest, and attorneys fees shall be consolidated, and the resulting consolidated balance (hereinafter referenced as the "Allowed Class 2 Claim") shall be amortized over thirty years and accrue interest at the fixed simple rate of 5.25% per annum until paid in full.  Interest-only payments (estimated in the projections attached to Disclosure Statement at @$8,340/month) shall be paid to Class 2 Claimant on the first day of the full month following the Confirmation Date, and on the first day of each month thereafter until paid in full.

       The Allowed Class 2 Claim shall mature and be due and payable in full on the first full day of the twenty fourth (24th) month following the Effective Date from the net proceeds generated from either the sale or refinancing of all or a portion of its real property collateral as described at paragraph 11.05 of the Disclosure Statement as the so-called "Main House" which sits on approximately 14 acres on the Ranch (APN 004-140-72) (the "CVCB Collateral").  Class 2 Claimant shall rescind its Notice of Default as soon as possible after the Confirmation Date.

       Pending the payment in full of Allowed Class 2 Claim, Class 2 Claimant shall retain all existing liens against the CVCB Collateral in the order and priority such lien(s) existed as of the Petition Date.  In addition to the foregoing, Debtor shall take all necessary and reasonable steps required to maintain and preserve the CVCB Collateral and Debtor shall make the following adequate protection payments to or for the benefit of Class 2 Claimant:  (1) timely payment of all real property taxes assessed against the CVCB Collateral as such taxes are due and payable, and (2) monthly interest payments as provided for above.

       Upon payment in full of the Allowed Class 2 Claim, Class 2 Claimant shall irrevocably release – and shall be deemed automatically and for all purposes to have irrevocably released -  any and all right, title, interest in and claims and/or liens it has or may have (known or unknown)  against the CVCB Collateral.

    **6.04**   <u>**Class 3**</u>  **(Allowed Secured Claim of Joe & Lavone Curto Family Trust)**

       Class 3 consists of the Allowed Secured Claim of Joe & Lavone Curto Family Trust (the "Trust" or "Class 3 Claimant").  Class 3 Claimant is unimpaired as on October 19, 2015, Class 3 Claimant was paid in full through the Court-approved sale of the collateral (75085 Inverness Drive in Indian Wells, California (APN #633-720-015-5)) securing their claim.  Class 3 Claimant shall receive no further distribution in this case.

**6.05    Class 4(a)   (Tehama County Tax Collector)**

Class 4(a) consists of the Allowed Secured Claim of the Tehama County Tax Collector ("TCTC" or "Class 4(a) Claimant") on account of real property taxes assessed against the Real Estate.  According to Debtor's records, all real property taxes were paid current through June 30, 2015 as of the Petition Date.  Class 4(a) Claimant shall retain all statutory lien rights arising under applicable nonbankruptcy law, and Debtor shall continue to pay timely all real property taxes and assessments in the ordinary course of business as such taxes become due and payable.  This Class 4(a) Claimant is *not* impaired.

**6.06    Class 4(b)   (Riverside County Tax Collector)**

Class 4(b) consists of the Allowed Secured Claim of the Riverside County Tax Collector ("TCTC" or "Class 4(b) Claimant") on account of real property taxes assessed against the Real Estate.  On October 19, 2015, Class 4(b) Claimant was paid in full through the Court-approved sale of the collateral (75085 Inverness Drive in Indian Wells, California (APN #633-720-015-5)) securing its claim.   This Class 4(b) Claimant is *not* impaired and shall receive no further distribution in this case.

**6.07    Class 5   (Hank Spacone, Trustee of Shasta Enterprises Chapter 11 Case)**

Class 5 consists of the disputed contingent claim (the "Class 5 Claim") filed on June 25, 2015, by Hank Spacone in his capacity of Chapter 11 Trustee of Shasta Enterprises, a California partnership ("Class 5 Claimant"), as such claim may be amended from time to time.  This Claim is  impaired.

The Class 5 Claim shall be deemed an Allowed Unsecured Claim in such amount (the "Class 5 Allowed Unsecured Claim") and at such time, if ever, that Class 5 Claimant obtains a final judgment against Debtor on the Class 5 Claim in an adversary proceeding filed in the Shasta Enterprises case ("Shasta Chapter 11") or similar action (the "Shasta Clawback Action").

If the Class 5 Claimant has filed the Shasta Clawback Action and dividends are payable to Debtor on the BR Claim (as defined below) in the Shasta Chapter 11 prior to resolution of the Shasta Clawback Action, and except as otherwise  ordered by the Bankruptcy Court,  the Class 5 Claimant shall withhold from any dividend then payable to Debtor in the

Shasta Chapter 11, and deposit in an interest bearing, federally insured, blocked account (the "Blocked Account"), an amount equivalent to one hundred and ten percent (110%) of the maximum claim asserted by Class 5 Claimant in good faith against Debtor in the Shasta Clawback Action, pending a final judgment or resolution. Once the Blocked Account is funded, all other distributions due on the BR Claim shall be made to Debtor. If the Shasta Clawback Action is resolved in favor of the Class 5 Claimant, either by final judgment or other final resolution, the Blocked Account balance up to the amount of the judgment shall be released to the Class 5 Claimant. . Any difference between the balance in the Blocked Account and theClass 5 Allowed Unsecured Claim shall upon final resolution of the Shasta Clawback Action in favor of the Class 5 Claimant be immediately distributed to Debtor on account of Debtor's claim against Shasta Enterprises, which consists of its originally scheduled claim of $2,857,267, plus approximately $350,000 loaned to Shasta Enterprises post-petition (see "Order on Motion for Authority to Assume Executory Contract and for Post-Petition Borrowing" filed January 7, 2015 in Case #2014-30833 as Doc#176) (the "BR Claim").[1] All rights of Debtor to file an amended claim as a result of payment of the judgment and to receive further distributions shall be governed by the Code and other applicable law. In the event there is a deficiency owing to the Class 5 Claimant by Debtor in excess of the funds in the Blocked Account, such deficiency shall be treated and paid as a Class 6 General Unsecured Claim, except that in addition to such rights, the Class 5 Claimant may apply any future dividends otherwise due on the BR Claim to such deficiency until it is satisfied. If final judgment or resolution is in favor of Debtor in the Shasta Clawback Action, the Blocked Account shall be released to Debtor.

During any time that the Shasta Clawback Action is pending or has resulted in final judgment or other resolution in favor of the Class 5 Claimant that remains unsatisfied, and no dividend is otherwise payable to Debtor on the BR Claim in the Shasta Chapter 11, the Class 5 Claimant shall be entitled to all of the rights and benefits of Code section 502(d), including treating the BR claim as disallowed until the judgment against Debtor is satisfied. Under such circumstances, the Allowed Class 5 Claim shall be treated and paid as a Class 6 General Unsecured Claim.

Nothing in this or any other provision of this Plan shall restrict the Debtor's ability

---

[1] As Debtor notes at Article VI (page 12, line 23.5) of the Disclosure Statement, Debtor claims the amount owed is $4,213,869.65 as of the Shasta Enterprises Petition Date. Class 5 Claimant's vote in favor of plan treatment does not constitute an admission of the amount owed or the allowance of such claim amount.

post-confirmation to enter into an agreement with the Class 5 Claimant for subordination or other specially negotiated treatment of the BR Claim in the Shasta Chapter 11.

6.08    Class 6(a) (Allowed Unsecured Convenience Class Creditors)

Class 6(a) consists of creditors whose claims total less than $2,500.00 or who voluntarily reduce their claims to $2,500.00 ("Class 6(a) Allowed Unsecured Convenience Claims). These claims shall be paid in full by the Debtor by on the Effective Date No interest or other fees or charges shall accrue post-petition on account of any Class 6(a) Allowed Unsecured Convenience Claims. Debtor estimates that Class 6(a) Allowed Unsecured Convenience Claims amount to $945 as follows:

- Southern California Edison Company         ($277.34 – Claim #2)
- VESTRA Resources, Inc.                      ($667.28 – Claim #3)

This Class 6(a) is unimpaired.

**6.09    Class 6(b) (General Unsecured Creditors)**

Class 6(b) consists of all Allowed Unsecured Claims not treated in any other Class, including any deficiency claims of holders of Allowed Secured Claims. This Class is impaired. Debtor estimates that Class 6(b) Unsecured Claims amount to approximately $125,000 as follows:

- Antonio Rodriguez III                        ($125,000 – Scheduled);

Class 6(b) Allowed Unsecured Claims shall be paid *pro rata* by the Debtor from available funds in the Creditors' Account on a semi-annual basis to the extent funds are available for such purpose as more specifically provided at Article VIII of the Plan. In no event shall Class 6(b) Creditors receive more or less than one hundred percent (100%) of their Allowed Claims under the terms of this Plan. Interest shall accrue on all Class 6(b) Allowed Unsecured Claims, beginning on the Effective Date, at the simple rate of seven percent per annum until paid in full.

Pro-rata distributions shall be made to or on account of Class 6(b) Allowed Unsecured Claims as soon as practicable, but in no event prior to such time that all Administrative Claims and Unclassified Claims referenced at Article II of the Plan have been

liquidated and paid in full, and so long as at the time of such distribution(s), Debtor has a sufficient reserve of Net Income to fund its business operations and to timely make all other payments required under the Plan.

**6.10    Class 7 (Equity)**

Class 7 consists of all interests of Debtor's General Partners, Antonio Rodriguez Jr. and Managing Partner Antonio Rodriguez III (the "Class 7 Members") in the Debtor.  The Class 7 Members are unimpaired and shall retain all interests in Debtor notwithstanding confirmation of this Plan and/or Debtor's discharge, but shall receive no distribution on their respective capital accounts except after full payment of all Allowed Unsecured Claims. Notwithstanding the foregoing, to the extent practicable, Debtor may set aside and pay to the appropriate taxing authorities on behalf of the Class 7 members funds from any unencumbered net sale proceeds to cover taxes owed by Class 7 Members as a direct result of such sale(s).   At the expiration of the Plan Term or, if earlier, the entry of Debtor's Discharge, any and all right, title, interests and/or claims of Creditors in (1) Debtor's Real Estate , (2) the Creditor Account, (3) property of the estate (revested or otherwise), and (4) any and all other real or personal property assets of the Debtor, including income from any source, existing as of the end of the Plan Term, whether or not held for the benefit of creditors, shall terminate and/or revert to Debtor, free and clear of such claims and/or interests (excluding only consensual deeds of trust).  Debtor reserves all rights and claims against the Class 7 Members, including but not limited to rights and claims, whether legal or equitable, including claims for contribution and indemnity.

**Article VII**

**Event of Default**

7.01    Except to the extent otherwise provided in this Plan, in the event Debtor fails to perform any material obligation called for under the Plan with respect to a particular Claimant and/or Claim, and if Debtor fails to cure the default within twenty (20) calendar days of the receipt of a written notice of the default from such affected Claimant, that Claimant may immediately pursue such remedies as against the affected Claim(s) as are permitted with reference to applicable State and/or Federal law, subject only to any limitations set forth in this Plan, without further notice or Court order.

7.02    Except to the extent otherwise provided in this Plan, notice of any default given under this section shall be deemed made when faxed and e-mailed to Debtor's counsel at (916) 488-3400 and at hollisterlaw@earthlink.net, respectively, and to the Debtor, care of Antonio Rodriguez III at rodrodrigueziii@gmail.com, respectively (or any substitute facsimile number or email address given to creditors by either of the foregoing) and mailed, certified return receipt requested, to Debtor, and to Debtor's counsel at the following addresses:

- BR Enterprises, a California General Partnership, care of Hollister Law Corporation, 655 University Ave., Ste. 200, Sacramento, CA 95825

- BR Enterprises, a California General Partnership, care of Antonio Rodriguez, III, Managing Partner, 310 Hamilton Street, Redding, CA 96001

7.03    Except to the extent otherwise provided in this Plan, notwithstanding the foregoing, an event of default occurring with respect to one Class or Subclass shall not be considered an event of default with respect to any other Class or Subclass.

## Article VIII

## Execution and Implementation of the Plan

8.01    _Generally_.  The Plan shall be funded by Debtor through the liquidation or refinancing of Debtor's Real Estate as necessary to make the payments called for under the Plan.

8.02    _Management of Accounts_:    At all times following the Confirmation Date, Debtor shall continue to maintain and manage all of its business affairs and accounts, and shall retain its current interest bearing, federally insured depository account(s) (the "Creditors' Account"), which shall be funded, managed and controlled by Debtor, and from which payments to creditors shall be made. Restrictions upon the disbursement of disputed or disallowed claims is governed by Article XVII, paragraph 17.2, below.

## Article IX

## Disallowance of Claims/Retention of Property

9.01    Notwithstanding anything to the contrary herein, and except as otherwise agreed by the Debtor or ordered by this Court, no attorney's fees or other "professional" fees (as the term "professional" is defined in 11 U.S.C. §327) or default interest, late penalties or any similar charge claimed after the Petition Date but prior to the Confirmation Date shall be paid, nor shall

the same constitute part of an Allowed Claim, until the creditor or professional seeking to recover said fees from the Debtor, or the Estate has or have had such fees approved as "reasonable" or otherwise properly payable by the Bankruptcy Court.  Such approval must be made through a motion for the recovery of same made on no less than twenty-eight (28) days' written notice to the Debtor, any Unsecured Creditors' Committee, and the Office of the United States Trustee.  Any professional fees or default interest, late penalties or similar charges claimed after the Petition Date but prior to the Confirmation Date claimed by a creditor of the estate as compensable by the Debtor or the Estate which have not been asserted through the above procedure within sixty (60) days after the Confirmation Date shall be deemed barred without further notice or order.

9.02    Notwithstanding anything contained herein, the Debtor shall have the right to request the Court to disallow any claims of any person from which property is recoverable under section 541, 542, 543, 550, or 553 of Title 11 or that is a transferee of a transfer avoidable under section 544, 545, 547, 548, or 549 of Title 11 unless such Person or transferee has paid the amount, or turned over any such property for which such Person or transferee is liable.

9.03    Except as otherwise specifically provided herein, the Debtor shall retain all Property of the Estate including any rights under the avoidance actions, which shall become property of the reorganized Debtor.  Professional fees incurred and funds borrowed by the Debtor to conduct its lawful financial and business affairs after the Confirmation Date need not be approved by the Bankruptcy Court as a condition to payment by the Debtor.

9.04    Except as otherwise agreed by the Debtor or ordered by this Court, Claims filed after the Bar Date shall be deemed automatically disallowed.  Except provided in paragraph 6.02, below, all objections to Claims shall be filed within twelve (12) months after the Effective Date (the "Claims Objection Bar Date"), unless the Debtor obtains an extension of this deadline through a noticed motion.  If a party has timely filed an objection to a Claim, the party who filed the objection and the holder of the disputed Claim may enter into a written settlement agreement to compromise such Claim, which agreement, when filed with the Bankruptcy Court, will constitute allowance of the Claim in the compromised status and amount.  The payment of any Claim or any portion thereof by or on behalf of the Debtor and/or Disbursing Agent shall not be deemed a waiver of the right to subsequently object to all or a portion of the Claim and seek turnover of monies improvidently paid.

9.05    Debtor may enter into a written settlement agreement to compromise any dispute and/or Claim, which agreement, when filed with the Bankruptcy Court, will constitute a final judgment and/or order with respect to the dispute or Claim so settled, in the compromised status and amount with the same force and effect of a Final Order.

9.06    Any and all assets or interests owned or held by Debtor, and/or Property of the Estate shall be retained by Debtor up until the Confirmation Date and, thereafter, title and/or possession shall automatically revest with the reorganized Debtor.

## Article X

### Request for Finding of Fair and Equitable Treatment

The Debtor, as the proponent of this Chapter 11 Plan, hereby requests pursuant to Section 1129(b) of the Code, that this Court find that the provisions of this Plan provide fair and equitable treatment to and do not unfairly discriminate against those Claimants and interest holders who are impaired under the Plan and who elect not to accept the Plan, and that this Court confirm the Plan under the so-called "cram-down" provisions of the Plan pursuant to 11 U.S.C. §1129(b) notwithstanding the requirement of Section 1129(a)(8) as to such Claimants.

## Article XI

### Conditions Precedent to Distributions Under the Plan

In addition to the other terms and conditions set forth herein, the following shall constitute conditions precedent to any Claimant's right to participate in the distributions under the Plan:

11.01    Any Creditor otherwise entitled to a distribution shall execute and deliver to the Debtor or join in the execution or delivery of any instrument necessary for consummation of the Plan.  Nothing herein shall be construed to prevent or preclude any creditor from contesting the Plan, and Debtor shall not withhold any distribution to any creditor solely because such creditor participated in the Plan confirmation process.

11.02    Any Person against whom a turnover judgment has been entered in this case shall turn over to the Debtor the property, or the value thereof, ordered turned over by such judgment. No Person against whom a turnover judgment has been ordered shall have any right to participate in distributions under the Plan until such Person turns over to the Debtor the required amount, or the value thereof, and such Person shall forfeit any rights to distribution which the Plan

contemplates and which would have occurred during the period of noncompliance with any turnover judgment. Notwithstanding the foregoing, nothing contained herein shall limit any right of the Debtor to enforce any judgment of the Court.

11.03   Debtor does not anticipate at this time prosecuting avoidance actions through the Plan. Nonetheless, Debtor reserves the right to prosecute any claim or cause of action, including but not limited to any avoidance actions and, in the event any such reserved claim is prosecuted, as a condition to participation in distributions under the Plan, any Person against whom any judgment has been entered shall immediately satisfy and/or otherwise comply with the judgment. No Person shall have any right to participate in distributions under the Plan until such Person satisfied the judgment, and such Person shall forfeit any rights to distributions which the Plan contemplates and which would have occurred during the period of noncompliance with any judgment.

### Article XII

### General Provisions

12.01   Unclaimed Funds/Distributions.   Unclaimed distributions, if any, remaining as of the end of the Plan Term will be deposited into the Court's "Unclaimed Funds Account." Separate checks shall be delivered to the Clerk of Court, made payable to "Clerk, U.S. Bankruptcy Court" with a reference to the entitled Claimant's name and the bankruptcy case number.

12.02   Post-Confirmation Payment of Professionals.   All professionals, including but not limited to attorneys, accountants and brokers providing post-confirmation services to Debtor shall submit periodic, detailed invoices to Debtor. Debtor is authorized to pay such periodic invoices without further order of the Court.

12.03   Post-Petition Borrowing from Insiders.   Nothing herein prevents Debtor from borrowing funds, including all or a portion of the funds required to fund this Plan, so long as any loan is memorialized by a written promissory note.

### Article XIII

### Modification of Plan

13.01   Modification of this Plan shall be governed by the provisions of Bankruptcy Code Section 1127.

- 25 -

**Article XIV**
**Executory Contracts**

14.01   As of the Effective Date, Debtor assumes (to the extent they constitute assumable executory contracts under applicable law) all of the executory contracts and unexpired leases described in Debtor's Schedule "G" *with the exception of any brokerage agreements or relationships which were not expressly approved by the Debtor following authorization by the Bankruptcy Court after the Petition Date*.  As to each executory contract that is assumed herein, any monetary defaults will be cured as a condition to assumption and paid as a Non-Classified Claims in accordance with Article II above.

14.02   Except for the executory contracts set forth immediately above or that are subject to prior orders in the Chapter 11 Case for assumption or rejection pursuant to Section 365 of the Bankruptcy Code, Debtor hereby rejects all executory contracts and unexpired leases to which they were a party – or are deemed to have been a party to – as of the Petition Date.  Except as otherwise permitted by law, all claims arising from the rejection of executory contracts and/or unexpired leases must be filed with the Court within thirty (30) days of the Effective Date or shall be barred.

**Article XV**
**Effect of Confirmation**

15.01   Except as otherwise provided in the Plan or in the confirmation order, Debtor shall be discharged pursuant to Section 1141 of the Bankruptcy Code, effective as of the earlier of the last day of the Plan Term or the date the last payment required under the Plan is made.  The discharge shall be effective as to all Claims regardless of whether a Claim was filed or scheduled, and/or whether the Claim is an Allowed Claim or whether the holder of the Claim votes to accept the Plan.  The automatic stay of Section 362 of the Bankruptcy Code shall remain in effect until the case is closed or dismissed, or until the discharge becomes effective.  Upon Confirmation, subject to any restrictions in this Plan including but not limited to paragraph 2.1 (i.e., providing that "Debtor shall pay the remaining unpaid amount of any Administrative Claim in full prior to or concurrently with the close of escrow of the sale, refinancing or encumbering of any of Debtor's Real Estate"), Debtor may conduct its lawful business and financial affairs, including but not limited to the compromise of claims, the borrowing of funds on either a secured or

- 26 -

unsecured basis, and/or the liquidation of all or a portion of the Property of the Estate, without restrictions or further Court approval and, except as expressly provided in the Plan, the obligations to all creditors will be conclusively deemed current and all incidences of default shall be conclusively deemed cured retroactive to any default so cured.

15.02   Except as otherwise expressly stated in this Plan, from and after the Confirmation Date all loan documents, trust deeds and other contracts documenting claims against the Debtor shall be deemed modified, superseded, and/or extinguished completely, as the case may be, by, according to, and/or consistent with the terms of the Plan, without the need for any further action by Debtor.  After the Confirmation Date, Claims shall be paid only in accordance with the Plan.

15.03   Confirmation of the plan shall not act or serve to ratify any violation of any injunction, including the automatic stay and/or the injunction referenced at Bankruptcy Rule 7062, against property of the estate by creditors of this estate.

15.04   Pursuant to Section 1142(a), notwithstanding any other applicable non-bankruptcy law, rule or regulation relating to financial condition, Debtor is authorized to take any and all lawful action necessary to carry out the terms of the Plan.  Moreover, all claimants holding liens on the Debtor's assets shall execute or deliver, or to join in the execution or delivery, of any instrument or other document required to effect a transfer of property dealt with by the Plan, and to perform any other act, including the satisfaction of any lien that is necessary for the consummation of the Plan.  To the extent that any lienholder fails to comply with this provision, in addition to any other remedies available under this Plan or applicable law, the Debtor may seek an order from the Bankruptcy Court, on an expedited basis, compelling compliance with this provision, and during that time period encompassed by this compliance, no payments shall be made to the noncomplying Creditor and no interest on the noncomplying creditor's claim shall accrue under the Plan, and any such Creditor shall be responsible for all costs and damages incurred by the Debtor as a result of such Creditor's noncompliance with this provision.

15.05   Except as otherwise provided herein, all assets and Property of the Estate shall vest in the Debtor as of the Confirmation Date in accordance with Section 1141(b).  The characterization of such assets or property as being held as separate or community property or otherwise under applicable State law shall not be affected as a result of confirmation of the Plan.

**Article XVI**
**Retention of Jurisdiction**

DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION [11/23/2015]

The Court shall retain jurisdiction of this Chapter 11 case until this Plan has been fully consummated, pursuant to and for the purposes set forth in the Code, and specifically for the purpose of:

16.01   Classification of the Claim of any Creditor in the reexamination of Claims which have been allowed for the purposes of voting for the determination of such objections as may be filed to Creditor's Claims.  The failure by the Debtor to object to or examine any claim for the purpose of voting shall not be deemed to be a waiver of Debtor's right to object to or reexamine the Claim in whole or in part, nor shall the payment of any claim or any portion thereof be deemed a waiver to subsequently object to all or a portion of the claim and seek turnover of monies improvidently paid.

16.02   The allowance of compensation or other administrative expenses incurred prior to the Confirmation Date.

16.03   To hear and determine the allowance and/or amount of Allowed Claims and/or adjustments thereto, including but not limited to, claims concerning state, local, and federal taxes pursuant to sections 346, 505, 525, and 1146 of the Bankruptcy Code.

16.04   To hear and determine any action or proceeding brought by Debtor under sections 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, whether such action or proceeding is brought before or after the Effective Date.  The Debtor's right to prosecute such actions is expressly reserved herein.

16.05   To hear and determine all actions and proceedings which relate to pre-confirmation matters brought by the Debtor whether such action or proceeding is brought before or after the Effective Date.

16.06   The determination of any issues relating to the assumption or rejection of executory contracts and unexpired leases including the assumption or rejection of executory contracts or unexpired leases not expressly dealt with herein.

16.07   The correction of any defects, the curing of any omission, or the reconciliation of any inconsistency of this Plan or in the Order of Confirmation as may be necessary to carry out the purposes and intent of this Plan.

16.08   The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and Title 11 of the United States Code.

16.09   The enforcement and interpretation of the terms of this Plan.

- 28 -

16.10   The entry of any order, including injunctions, necessary to enforce title, rights and powers of the Debtor, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary including, without limitation, any right of the Debtor to recover assets pursuant to the provisions of the Bankruptcy Code.

16.11   The determination of the validity, extent and priority of all liens and security interests against property of the Debtor's Chapter 11 estate and/or property of the Debtor.

16.12   To hear and determine such matters and make such orders as are consistent with the Plan as may be necessary or desirable to carry out the provisions thereof.

16.13   Any disputes arising under or relating to any order entered by the Court in this proceeding.

16.14   The entry of an order concluding and terminating this Chapter 11 case.

## Article XVII

## Retention of Litigation Rights

17.01   Debtor reserves all rights to assert, prosecute, defend against and/or liquidate any and all claims and/or assets, including but not limited to any action or proceeding arising under sections 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, whether such action or proceeding is brought before or after the Effective Date, notwithstanding anything herein to the contrary.  Debtor shall not be barred, either by the doctrine of res judicata effect or any other legal or equitable law or doctrine, from initiating litigation, raising defenses and/or exercising its rights under this section.  The payment of any claim or any portion thereof by or on behalf of the Debtor shall not be deemed a waiver of any right to subsequently object to all or a portion of the claim and seek turnover of monies improvidently paid.

17.02   In the event any matter, claim or interest is in controversy, including without limitation, administrative, priority, secured and/or unsecured claims, Debtor shall withhold payment of or on account of any claim directly and materially affected by the controversy  until such time as the dispute has been resolved by nonappealable Final Order, except to the extent that a portion of any claim or controversy is allowed or conceded by Debtor, in which case the Disbursing Agent shall make a distribution on account of such allowed portion of the disputed claim in accordance with the terms of this Plan.

17.03   Debtor may, without the need to file a motion with the Court or give notice to any creditor, enter into a written settlement agreement to compromise any Claim or controversy,

1 which agreement, when filed with the Bankruptcy Court, will have the effect of a Final Order as
2 to the disposition of the settled controversy.

3 **Article XVIII**
**Postconfirmation Reporting and U.S. Trustee Quarterly Fees**

4

5     18.01   The Debtor shall continue to file with the Court a post-confirmation status report
6 substantially the form attached hereto as Exhibit "A", and pay to the United States Trustee the
7 quarterly fee required by 28 U.S.C. section 1930(a)(6), until this case is converted, dismissed, or
8 closed.  Reports for any given quarter shall be filed with the Court and served upon the United
9 States Trustee not later than twenty (20) days after the expiration of the reported quarter.

10 Dated:  November 23, 2015

11                                  BY: _____

12                                  ANTONIO RODRIGUEZ III,
13                                  Managing Partner, BR Enterprises, A
                                 California General Partnership

14 REPRESENTED BY:

15 HOLLISTER LAW CORPORATION

16 By: _____
17     GEORGE C. HOLLISTER
    Attorneys for Debtor

18

19

20

21

22

23

24

25

26

27

28

**DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION [11/23/2015]**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

# EXHIBIT "A"

## [POST-CONFIRMATION REPORT FORM]

21
22
23
24
25
26
27
28

**DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION [11/23/2015]**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA

In re:                                          Case No.

                                                Chapter 11

                                                QUARTERLY POST-CONFIRMATION
                                                REPORT FOR REORGANIZED DEBTOR

_____ Debtor (s)    For the Quarter Ending: _____

The reorganized debtor hereby submits the following post-confirmation report for the above described calendar quarter:

1.    Date of entry of order confirming plan:          _____

2.    Cash balance at the beginning of this quarter:   _____
      Total receipts during this quarter:              _____
      Total disbursements during this quarter:         _____
      Cash balance at the end of this quarter:         _____

3.    Payments made pursuant to the Plan this quarter: _____

      Total payments to be made pursuant to the Plan:  _____
      Cumulative paid to date:                         _____
      Balance remaining to be made under the Plan:     _____

_____

1/ First report shall be filed for the portion of the calendar quarter from the date of confirmation to the end of the quarter. Subsequent reports shall be filed at the expiration of each calendar quarter thereafter until dismissal, conversion, or entry of a final decree closing the case. Reports shall be filed with the Court and served upon the United States Trustee not later than twenty (20) days after expiration of the reported period.

Revised 8/2010                                          Page 1 of 2

<u>AS OF THE END OF THIS REPORTING PERIOD:</u>                                    Yes        No

4.    Are all payments required by the confirmed plan current at this time?           ☐          ☐
      **[If 'NO', attach an explanatory statement identifying payments not made.**
      **Include creditor, amount, due date, reason for non-payment <u>and</u>**
      **an estimated date when payments will be brought current.]**

5.    Do you currently anticipate a circumstance/event which will cause an            ☐          ☐
      interruption or cessation of payments or other performance under the
      Plan?   **[If 'YES', attach an explanatory statement.]**

6.    Have quarterly fees due to the United States Trustee as of the date of          ☐          ☐
      this report been paid pursuant to 28 U.S.C. § 1930(a)(6)?

7.    Have all motions, contested matters and adversary proceedings been              ☐          ☐
      fully resolved?  **[If 'NO', for each motion, contested matter or adversary**
      **proceeding, attach a statement identifying the parties and nature of the**
      **dispute and state the anticipated resolution.]**

8.    Has the order confirming the Plan become non-appealable?                        ☐          ☐

9.    Have deposits, if any, required by the Plan been distributed pursuant           ☐          ☐
      to the Plan?  **[If 'NO', attach an explanatory statement.]**

10.   Has any property proposed by the Plan to be transferred been transferred        ☐          ☐
      pursuant to the Plan?

11.   Does any property remain to be transferred pursuant to the Plan?                ☐          ☐
      **[If 'YES', attach a statement identifying each property to be transferred**
      **and the anticipated date of transfer pursuant to the Plan.]**

12.   Has the Reorganized Debtor(s) or the successor of the Debtor(s) assumed         ☐          ☐
      the business or management of the property dealt with by the Plan?

13.   Anticipated date of motion for final decree:             _____

      I declare under penalty of perjury that the statements set forth above are true and accurate.

      _____          _____
      Dated:                             Responsible Individual (signature)

                                         _____
                                         Print Name
      Current Address:                   _____
                                         _____
                                         _____
      Telephone Number:                  _____

Revised 8/2010                                                                        Page 2 of 2